NUMBER
13-03-304-CR

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

DON EUGENE EVANS,                                                                    Appellant,

                                                             v.

THE STATE OF TEXAS,                                                                    Appellee.

 

 

                    On appeal from the County Court at
Law

                                        of
Kleberg County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Rodriguez

 

      Opinion by Chief
Justice Valdez

 

 

 








Appellant, Don Eugene Evans, was convicted by a jury
in Kleberg County of the misdemeanor offense of hunting wildlife resources
without the consent of the landowner.  See
Tex. Parks & Wild. Code Ann. _ 61.022(a) (Vernon 2004).  The court assessed punishment at confinement
in the Kleberg County jail for a term of ninety days, suspended for twelve
months= community supervision, and a fine of $500.  Appellant appeals his conviction in one
issue: the evidence presented at trial was factually insufficient to prove his
guilt beyond a reasonable doubt.  We
affirm.

Facts








The primary issue in dispute at trial was whether
appellant, while hunting, had knowingly crossed from public State property to
private King Ranch property without the consent of King Ranch=s owners. 
According to testimony at trial, on December 23, 2001, Texas Parks &
Wildlife game wardens John McFall and Hector Garza came into contact with
appellant and his wife near Comitas Lake[1]
off the coast of Alazan Bay in Kleberg County. 
According to McFall=s testimony, the game wardens received a call from
King Ranch personnel about someone illegally hunting on King Ranch
property.  After finding appellant=s docked and empty boat, McFall testified that he
located appellant in an area which he described as Awell on King Ranch property.@  Appellant
was found wearing hunting gear and carrying a high-powered scope rifle used for
hunting large game animals.  According to
McFall, appellant accompanied the two wardens as they traced his tracks to
where they first led onto private King Ranch property, which was about one-half
to one mile away.  Both McFall and Garza
testified that the area appellant was found on belonged to King Ranch; however,
appellant was neither charged nor arrested during this encounter with the game
wardens.  Instead, McFall took appellant=s information in case King Ranch personnel wanted to
press charges. 

The State of Texas demarcates private land and state
lands through a Amean high tide@ system.[2]  See John G. & Marie Stella Kenedy Mem.
Found. v. Dewhurst, 90 S.W.3d 268, 278-79 (Tex. 2002) (explaining and
applying the mean high tide system).  According
to Garza, who has twenty-one years= experience as a warden, the mean high tide line
which demarcates the boundary between public and private land is easily
discernible in the area of Comitas Lake. 

On January 7, 2002, McFall met with Clint Fergeson,
a King Ranch law enforcement agent,[3]
to determine who owned the land where appellant was found.  Fergeson testified that appellant was Awell beyond the mean high tide line . . . and up
onto King Ranch property.@  Acting as an
agent of the King Ranch and possessing familiarity with King Ranch property
lines, Fergeson testified that appellant was several hundred yards onto the
King Ranch and that no consent was given to appellant to be on King Ranch
property. 








A witness for the defense, Leny Claige, testified
that he has hunted white tailed deer and hogs around the Comitas Lake area
since 1988.  Claige testified that there
are metal ANo Hunting@ and ANo Trespassing@ signs on top of bluffs well within the mean high
tide water line, but there are no signs on the beach or mud flats indicating
exactly where the private property line lies. 
It was common for Claige, while hunting, to park his boat and walk
across the same mud flats where appellant was found by the wardens. Claige also
testified that he has previously encountered game warden Garza in this area
while hunting but was never charged with trespassing or taking wildlife
resources without consent. 

Appellant testified that he practiced the same
hunting techniques as Claige; he would park his boat and wade through mud
flats, using a global position system (GPS) to track his whereabouts.  It was appellant=s testimony that he stayed in the lower mud flats
and did not cross the mean high tide water line and enter King Ranch property.  Appellant explained that he intended to hunt
on public lands only, not on King Ranch land. 


Appellant testified that he stored his GPS
coordinates and track marks from the date in question on his GPS.  He then gave these coordinates to Claige
about a week after the incident.  Claige
testified that he used these coordinates to determine that appellant was not on
private King Ranch property.  At no time,
however, did appellant give these GPS coordinates to any of the questioning
wardens.  Appellant also subsequently
purchased his own mapping software, 
plugged in his coordinates from the day in question and allegedly
determined that he had remained below the mean high tide mark and on State
property.  

Factual-Sufficiency

Standard of Review

Appellant argues that the evidence presented at
trial was factually insufficient to prove his guilt.  He specifically disputes (1) the jury=s finding that he crossed the mean high tide water
line and (2) the implicit finding that he knowingly entered King Ranch
property.








In a factual‑sufficiency review, the evidence
is viewed in a neutral light, favoring neither party.  See Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996).  In this
neutral light, we determine whether Athe proof of guilt is so obviously weak as to
undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.@  See Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  A clearly wrong and unjust verdict occurs
where the jury's finding Ashocks the conscience@ or Aclearly demonstrates bias.@  Santellan
v. State, 939 S.W.2d 155, 164‑65 (Tex. Crim. App. 1997).  We measure the factual sufficiency of the
evidence by the elements of the offense as defined by a hypothetically correct
jury charge.  See Adi v. State, 94
S.W.3d 124, 128 (Tex. App.BCorpus Christi 2002) (citing Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

Mean High Tide Mark

The jury was charged with determining whether
appellant crossed the mean high tide water mark and thereby entered onto
private property.   The definition of the
mean high tide mark was provided to the jury without objection in the charge of
the court.  Appellant argues only he, and
not the State, provided evidence at trial of where the mean high tide water
mark was located.  He further contends
the State=s evidence regarding the location of this mark or
line was opinion evidence only and could not conclusively establish that he
crossed onto private property.








Reviewing the totality of the evidence in a neutral
light, we conclude that the proof of guilt is so not obviously weak as to
undermine confidence in the jury=s determination and that the proof of guilt is not
outweighed by contrary evidence.  See
Johnson, 23 S.W.3d at 11.  The jury
is the exclusive judge of the credibility of witnesses and of the weight to be
given their testimony.  Barnes v.
State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (per curiam).  In this case, the jury could reasonably
choose to accept the State=s evidence and disbelieve the testimony presented by
appellant.  Although the map used at
trial by appellant states:  AShoreline is the approximate line at mean high tide
water mark,@ there is no indication on the map that delineates
this shoreline.  There are various lines
on the map at the expected water level as well as around Comitas Lake.  The jury could reasonably evaluate the
various map lines and the testimony about whether appellant=s location was above or below the mean high tide
water mark and could decide that appellant had in fact trespassed and hunted on
private property.  See id. at
321.  

Mens Rea

Appellant further argues that the State provided no
evidence that appellant possessed the appropriate mens rea to commit the
offense alleged.  The crime of taking
wildlife resources without the consent of the landowner under section 61.022 of
the Texas Parks and Wildlife Code requires a culpable mental state.  Harrison v. State, 76 S.W.3d 537, 541
(Tex. App.BCorpus Christi 2002, no pet.); see Tex. Parks & Wild. Code Ann. _ 61.022(a). 
Hunting is not, by its nature, a criminal act, and section 61.022 does
not prohibit any specific result.  Harrison,
76 S.W.3d at 541.  This Court has
previously stated:  AWhat makes hunting or possessing a wildlife resource
a criminal act under section 61.022 is a circumstance; that it is done without
the landowner's consent.@  Id.  Thus, it follows that in order to be convicted
under section 61.022, a person must be shown to have been acting without the
consent of the owner or the owner's agent and must have known that he was
acting without the owner's consent.  See
id.  








In the present case the jury was correctly charged
as to the culpable mental state being alleged.[4]   As shown in Harrison, establishing
the required culpable mental state when dealing with cases such as this
involves determining whether a person has consent from the landowner or
landowner=s agent and knows whether he has such consent.  See id. 
The requisite mental state is not, as appellant argues, whether
appellant Afelt@ he was on State public land.  Reviewing the totality of the evidence in a
neutral light, we conclude that there was sufficient evidence presented at
trial to establish the requisite mental state, in that appellant did not have
consent from the King Ranch owners or agents to hunt on their property and knew
he did not have such consent.  Thus, appellant=s conviction for taking wildlife resources without
consent is supported by factually sufficient evidence, see Johnson, 23
S.W.3d at 11, and his sole issue is accordingly overruled.

Conclusion

The judgment of the trial court is affirmed. 

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

Do not publish.

Tex.
R. App. P. 47.2(b).

 

 

Memorandum
Opinion delivered and filed

this
13th day of October, 2005.











[1]Comitas Lake is actually a dried
out piece of land covered by sand and mud flats.  





[2]The line of mean high tide marks
the boundary between private beach front property and the state=s submerged property.  See John G. & Marie Stella Kenedy Mem.
Found. v. Dewhurst, 90 S.W.3d 268, 278‑79 (Tex. 2002). This boundary
line may move landward or seaward as the beach moves and the property line
moves accordingly.  See id.  The Amean high tide line@ is the average of the highest daily tides over a period of
approximately nineteen years.  See id.;
see also Borax Consol., Ltd. v. Los Angeles, 296 U.S. 10, 26-7 (1935).





[3]Fergeson is employed by the King
Ranch through commission by Kleberg County Sheriff=s Office.  





[4]The relevant section of the jury
charge read as follows:  ANow, if you find from the evidence
beyond a reasonable doubt that on or about the 23 rd of December, 2001, in
Kleberg County, Texas, the defendant DON EUGENE EVANS, did intentionally or
knowingly hunt a wildlife resource, namely white-tailed deer without the
consent of the owner of the land, namely, Clint Fergeson; when said place was
covered by Chapter 61 of the Texas Parks and Wildlife Code, then you will find
the Defendant guilty as charged.@